**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **Wine Not International, Inc.,** an Ontario corporation, | |
| Plaintiff, | |
| v. | Case No._____ |
| **2atec, LLC, dba Aspirations Winery**, a Florida corporation, **Robert French**, and **Aspirations Winery, LLC**, a Florida corporation, | |
| Defendants. | |

## <u>COMPLAINT</u>

For its Complaint against defendants 2atec, LLC, dba Aspirations Winery and Robert French, plaintiff Wine Not International, Inc. states and alleges as follows:

### <u>THE PARTIES</u>

1.      Plaintiff Wine Not International, Inc. ("Wine Not") is a Canadian corporation with its principal place of business in Ontario, Canada.  Wine Not franchises independent wine businesses that manufacture and sell wine, teach winemaking, and sell related wine accessories.  Wine Not is the assignee of the Franchise Agreement between Wine Not, Inc. and Defendants.

2.      Defendant 2atec, LLC, dba Aspirations Winery ("Aspirations Winery"), is a Florida corporation with its principal place of business in Tampa, Florida.

3.      Defendant Robert French ("French") is a resident of Florida.

4.     Defendant Aspirations Winery, LLC, ("Aspirations Winery LLC") is a Florida limited  liability company with its principal address in Tampa, Florida.

## JURISDICTION AND VENUE

5.     Jurisdiction in this Court is founded upon 28 U.S.C. §§ 1331 & 1338 and 15 U.S.C. § 1121.  The civil action hereinafter alleged arises under the laws of the United States, including an Act of Congress, relating to trademarks and unfair competition.  All other claims herein alleged are so related to the claim under which this Court's original jurisdiction is founded that they form part of the same case or controversy and are a proper exercise of the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

6.     Venue is proper in this Court under 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND

### Wine Not System

7.     A Wine Not franchise is a self-contained winery that is sized to fit into a typical retail property or licensed establishment.  There are several components to a Wine Not winery: wine making, a tasting bar, and wholesale and retail sales.

8.     A Wine Not franchise owner makes wine by purchasing wine grape juice (also known as "must") from pre-approved international suppliers.  These suppliers produce highly acclaimed wine styles blended for use in the Wine Not custom winery system.

9.     Once the Wine Not custom winery receives the juices, the franchise owner ferments the juices in customized vessels.  The winemaking process takes up to four to six weeks.  This process uses Wine Not's proprietary wine making system and equipment.

10.     After the fermentation process, the franchise owner bottles the wine for sale. Specific Wine Not labels are placed on the back of the bottle.  Wine Not franchisees can develop their own Head Office and government-approved custom labels for the front of the bottle.

11.     A Wine Not custom winery can produce over 40 varietals with efficiency. This allows the winery to offer high-quality wine at a fraction of the cost that a consumer would pay for comparable commercial brands.

12.     Customers of a Wine Not custom winery can purchase the customized blends made by the franchisee, or they can participate in making their own wines according to State and Federal laws and regulations.

**Defendants Become a Wine Not Franchisee**

13.     Defendants became involved in the Wine Not system in May 2002, when they executed a franchise agreement dated May 31, 2002 (hereinafter referred to as the "Franchise Agreement").  A copy of the Franchise Agreement is attached as Exhibit A.

14.     The Franchise Agreement requires the franchisee to comply with various provisions.   For instance, the franchisee was given a right and license to use the Wine Not system and trademarks in connection with the operation of one Wine Not Store.  (Franchise Agreement, ¶ 1.02.)  The franchisee was prohibited from operating an additional store or a store outside of its designated territory without prior written permission from Wine Not. (Id.)  Aspirations Winery agreed that its franchise location would be in Tampa, Florida (hereinafter referred to as "the Tampa store").

15.     Under the Franchise Agreement, Aspirations Winery also agreed to the following:

a.  Paragraphs 5.01(g), 7.01 and 7.02 – to use and display the Wine Not trademarks only in the manner contemplated by the Franchise Agreement.

b.  Paragraph 5.01(h) - to devote substantially full-time attention to the operation of the Tampa store.

c.  Paragraph 5.03 – to purchase only those supplies and sell only those products associated with the Wine Not system.

d.  Paragraph 12.03 – obtain prior written consent before changing the composition of interest held in or partnership of Aspirations Winery.

16.   The Franchise Agreement also included a non-compete provision that applied both while Aspirations Winery operated as a franchise, and for two years thereafter. (Franchise Agreement, ¶ 11.)  Article 11 of the Franchise Agreement prohibits Aspirations Winery either directly or indirectly, for the Franchisee, or through, on behalf of, or in conjunction with any other person or legal entity from the following:

Upon the expiration or termination of this Agreement and for two years thereafter:

(a)  direct or attempt to divert any customer of the Store to any competitor by direct or indirect inducement or otherwise;

(b)  employ, seek to employ or accept the services of any person who is or has been employed within the past six months by the Franchisor or by any other franchisee of the Franchisor; or

(c)  own, maintain, engage in, be employed by or have a financial interest in any business which is the same as, or reasonably similar to, the business associated with the Store and that is located within a radius of 25 miles of any WINE NOT Store.

17.   In addition to the Franchise Agreement, French individually executed a Non-Competition and Confidentiality Agreement (the "Non-Compete Agreement").  The Non-Compete Agreement prohibited French from, among other things, competing with Wine Not

in the State of Florida for a period of one year after the termination of the Franchise

Agreement.  (Non-Compete Agreement, ¶ 2.)

18.     French, in his individual capacity, also executed a Guarantee and Indemnity

dated May 31, 2002 (the "Guarantee").  Under the Guarantee, French guaranteed to:

> pay all amounts to be paid and otherwise duly and punctually observe and
> perform all covenants, terms, condition and agreements to be observed and
> performed by the Franchisee…. If the Franchisee shall default in making any
> payments or observing or performing any covenants, agreements or
> obligations, the undersigned [French] covenants and agrees to pay to the
> Franchisor forthwith upon demand all amounts not so paid and all damages
> that may arise in consequence of any such non-performance or non-
> observance.

(Guarantee, ¶¶ 2 and 3.)

## Wine Not Training

19.  Wine Not provides extraordinary and specialized training and support to its

franchisees in general and to Defendants in particular.  Before becoming a franchisee, the

principal of Aspirations, French, had no experience in the operation of a winery.

20.     Once French became a franchisee, he attended Wine Not's training program at

Wine Not's headquarters in Canada from August 12-16, 2002.  The training and education

covered all aspects of operating a Wine Not franchise.  The trainers covered wine making,

tasting, customer service, marketing, purchasing procedures, inventory control and day-to-

day operational procedures.  French signed off on August 16, 2002 that he successfully

completed the Wine Not training program.

21.     At the conclusion of the initial training, French was given Wine Not's

Confidential Operations Manual.  The Operations Manual memorializes all of the details of

operating a Wine Not franchise.

22.     After returning to Florida, French received additional training before his store opened.  Wine Not corporate sent two trainers to the Tampa store to provide "hands-on" training relating to the critical wine-making procedures required to produce high-quality wines.  This included specified training on Wine Not's proprietary winery tanks by a specialist from the manufacturer.

23.     Since French opened his store, he has continued to receive support and training from Wine Not.  Wine Not has regular conference call franchisee meetings and a compulsory annual convention, where additional training is provided.  During the conference calls any pertinent franchise and industry information is presented, issues or problems are discussed, and sales successes are shared.  The annual conferences have included but are not limited to the following: a general meeting is held, suppliers are present to outline new products and industry information, a guest speaker is invited to present marketing and sales ideas, wine tasting and wine competition are held for education purposes, updates and training on the WMS software, and website training.

24.     As a result of Wine Not's extensive training programs, franchisees, like the Defendants, who have had no experience in the winery business, are equipped to enter and succeed in this business.

**<u>Defendants' Business</u>**

25.     From the inception of Defendants' franchise, French has been a difficult franchisee.

26.     Over the past three years, French has been habitually late with royalty reports and payments.  French only submits the reports and pays the royalties after much prodding. French has not made any payments since November 2005.

27.     Wine Not conducts inspections of its franchises every 3-4 months.  Plaintiffs' inspections of Defendants' premises regularly uncovered problems, such as dirty/unsanitary facilities, sub-par/spoiled wine in the tasting bar, equipment unclean and in poor condition, poor selling techniques on the franchisee's part, and advertising not being submitted for approval per the Franchise Agreement.

28.     Although a problematic franchisee, Wine Not continued working with Defendants in hopes that French's conduct would improve and that he would become an acceptable franchisee.

**Defendants' Default of the Franchise Agreement**

29.     In November 2005, Wine Not inspected the Tampa store and found very little wine on the shelves.  When asked about it, French stated that there was no wine because sales were slow, but he stated that he did have a lot of wine in process and some finished but aging.  This was highly unusual as this was the busiest selling time of the year for the Wine Not franchisees, and one would expect French would have wine made, aged, and on the shelves in time for the holiday season.  French was advised of his low retail stock and requested to increase it.

30.     Suspicious of French's response, Wine Not investigated further.  Wine Not called one of its juice suppliers.  Wine Not subsequently learned that French was purchasing grape juice from a non-approved supplier in violation of the Franchise Agreement.  Wine Not was alarmed by this default, particularly because using suppliers other than those approved jeopardizes the quality of the wine, and may harm not only the reputation of the individual franchise, but also the Wine Not brand name.

31.     Upon further investigation, Wine Not learned that French and Aspirations Winery were violating several provisions of the Franchise Agreement and the Non-Compete Agreement.  Unbeknownst to Wine Not until mid-December, French has opened a second Aspirations Winery location in St. Petersburg, Florida (the "unauthorized St. Petersburg store.")

32.     The unauthorized St. Petersburg store is a retail wine store.  It offered more than 2,000 bottles of custom-blended wine – wine that had been produced at the Tampa store using the Wine Not system and equipment.

33.     The unauthorized St. Petersburg store was being held out to the public as affiliated with Wine Not.  The unauthorized St. Petersburg store was touted in the newspapers as being a "second Aspirations Winery store" that was affiliated with the "very successful program" in the Tampa store.

34.     In addition, the unauthorized St. Petersburg store was using the Wine Not Mark.  The unauthorized St. Petersburg store had two posters with the company's old logo.  Additionally, each bottle had the Wine Not name on the back label.

35.     Upon information and belief, the unauthorized St. Petersburg store is run by Richard Cresswell, the Vice President of Aspirations Winery and one of French's partners in the business.

36.     Prior to mid-December 2005, Wine Not had no knowledge that French had opened a second store that was selling Wine Not wine.  Wine Not had not received any notice from French about the St. Petersburg store, let alone any royalties from the sale of wine at the unauthorized St. Petersburg store.  In short, French was using the information, equipment, and supplies that he had as a result of being a Wine Not franchisee to produce

8

wine that he was selling as affiliated with the Wine Not system without paying Wine Not any royalties.

37.     After learning of French's conduct, Wine Not immediately sent a Notice of Default letter to French notifying him of the critical breaches of the Franchise Agreement and Non-Compete Agreement.  A copy is attached as Exhibit A.  Wine Not gave French ten days to cure the defaults.

38.     Neither Aspirations Winery nor French cured the defaults.  As a consequence, on December 16, 2005, Wine Not terminated the Franchise Agreement.  A copy of the December 16 termination letter is attached as Exhibit B.

39.     In the termination letter, Wine Not reminded Defendants of their obligations to comply with the post-termination provisions imposed by the Franchise Agreement.  Wine Not requested written confirmation that it would comply with these obligations by December 26, 2005.  Wine Not specifically stated that French needed to cease operations of the unauthorized St. Petersburg store.

40.     On December 29, 2005, representatives of Wine Not visited the unauthorized St. Petersburg store and confirmed that it was still operating and using the Wine Not trademarks.

41.     As of January 14, 2005, Defendants were still holding themselves out as a Wine Not franchise and their website – www.winenotfl.com – was still operating.  To date, no changes have been made to the Tampa store or, upon information and belief, to the unauthorized St. Petersburg store.

42.     All conditions precedent to this action have occurred, have been satisfied, or have otherwise been waived.

## COUNT ONE
### (Breach of Contract/Covenant Not to Compete: Defendant French)

43.     Wine Not restates paragraphs 1 through 42 above.

44.     Under the terms of French's Non-Competition and Confidentiality Agreement ("Non-Compete Agreement"), French has certain non-compete obligations both during and after the termination of the Franchise Agreement.  Section 2 of the Non-Compete Agreement provides:

> **2      Non-Competition**.  The Covenantor [Robert French] shall not, while an employee of the Franchisee and for a period of one year from the date it ceases to be an employee of the Franchisee, directly or indirectly, in any manner whatsoever including, without limitation, either individually, in partnership, jointly or in conjunction with any other Person, or as employee, principal, agent, director, officer, employee, consultant, or in any other capacity whatsoever:
>
> (a)     carry on or be engaged in, concerned with or interested in, any undertaking; or
>
> (b)     have any financial or other interest (including any interest by way of royalty or other compensation arrangements) in or in respect of the business of any Person which carries on a business; or
>
> (c)     advise, lend money to, guarantee the debts or obligations of any Person which carries on a business;
>
> which is the same as or substantially similar to or which competes with or would compete with the Business anywhere in the following territory:
>
> (i)     in the State of Florida;
>
> (ii)    within a 25 mile radius of any Wine Not Store operating (whether owned or franchised) at the time of the breach; or
>
> (iii)   within a 25 mile radius of any of the following Wine Not Stores (whether owned or franchised):
>
> (list omitted).

45.     This covenant not to compete is restricted in its operation in time because it is limited to a one-year time period, and it is supported by consideration.

46.     The covenant not to compete reasonably protects Wine Not's legitimate business interests.  Specifically, Wine Not has a legitimate interest in enforcing French's non-compete because it is necessary to protect Wine Not's goodwill.

47.     The covenant also protects against customer confusion.  Customers/clients who have developed a relationship with the French's businesses may well come to associate the businesses more with French than with Wine Not.  As far as these customers know, French is continuing to offer the same winery.  The customers may even believe that Wine Not in some way sanctions the winery.  The confusion can be avoided only through enforcement of the non-compete.

48.     Another interest Wine Not has in the enforcement of the non-compete is the message that a failure to enforce sends to other franchisees in the Wine Not system.

49.     Moreover, the covenant not to compete protects Wine Not's trade secrets and other confidential and proprietary information.

50.     French has breached his covenant not to compete by continuing to sell wine in the Tampa store subsequent to the termination of the Franchise Agreement.

51.     French has also breached his covenant not to compete by selling wine in the unauthorized St. Petersburg store.

52.     As a result of French's operation of a directly competitive business, Wine Not has suffered irreparable harm and will continue to suffer irreparable harm.

53.     The covenant not to compete is a critical element to the Wine Not franchise system because it protects the franchise system for the benefit of franchisees and the public.

54.     There is no adequate remedy at law to protect Wine Not's substantial business and property rights.

55.     French has willfully violated his covenant not to compete in order to involve himself in the operation of a directly competitive business.

56.     Wine Not is entitled to preliminary and permanent injunctive relief enforcing the covenant not to compete provisions of the Non-Compete Agreement

**COUNT TWO**
**(Breach of Contract/Covenant Not to Compete: Defendant Aspirations Winery)**

57.     Wine Not restates paragraphs 1 through 42 above.

58.     Under the terms of the Franchise Agreement, Aspirations Winery has certain non-compete obligations both during and after the termination of the Franchise Agreement. Article 11 of the Franchise Agreement prohibits Aspirations Winery either directly or indirectly, for the Franchisee, or through, on behalf of, or in conjunction with any other person or legal entity from the following:

Upon the expiration or termination of this Agreement and for two years thereafter:

(a)     direct or attempt to divert any customer of the Store to any competitor by direct or indirect inducement or otherwise;

(b)     employ, seek to employ or accept the services of any person who is or has been employed within the past six months by the Franchisor or by any other franchisee of the Franchisor; or

(c)     own, maintain, engage in, be employed by or have a financial interest in any business which is the same as, or reasonably similar to, the business associated with the Store and that is located within a radius of 25 miles of any WINE NOT Store.

59.     This covenant not to compete is restricted in its operation in time because it is limited to a two-year time period, and it is supported by consideration.

60.     The covenant not to compete reasonably protects Wine Not's legitimate business interests.  Specifically, Wine Not has a legitimate interest in enforcing Aspiration Winery's non-compete because it is necessary to protect Wine Not's goodwill.

61.     The covenant also protects against customer confusion.  Customers/clients who have developed a relationship with Aspirations Winery may well come to associate the businesses more with Aspirations Winery than with Wine Not.  As far as these customers know, Aspirations Winery is continuing to operate the same winery and offer the same wine. The customers may even believe that Wine Not in some way sanctions the winery.  The confusion can be avoided only through enforcement of the non-compete.

62.     Another interest Wine Not has in the enforcement of the non-compete is the message that a failure to enforce sends to other franchisees in the Wine Not system.

63.     Moreover, the covenant not to compete protects Wine Not's trade secrets and other confidential information.

64.     Aspirations Winery has breached his covenant not to compete by continuing to sell wine in the Tampa store after termination of the Franchise Agreement.

65.     As a result of Aspiration Winery's operations of a directly competitive business, Wine Not has suffered irreparable harm and will continue to suffer irreparable harm.

66.     The covenant not to compete is a critical element to the Wine Not franchise system because it protects the franchise system for the benefit of franchisees and the public.

67.     There is no adequate remedy at law to protect Wine Not's substantial business and property rights.

68.     Aspirations Winery has willfully violated its covenant not to compete in order to involve itself in the operation of a directly competitive business.

69.     Wine Not is entitled to preliminary and permanent injunctive relief enforcing the covenant not to compete provisions of the Non-Compete Agreement

### COUNT THREE
### (Federal Trademark Infringement, 11 U.S.C. § 1114: All Defendants)

70.     Wine Not restates paragraphs 1 through 42 above.

71.     Wine Not was granted registration of its trademark by the United States Commissioner of Patents and Trademarks, Certificate of Registration Nos. 2,777,853 on October 23, 2003 (and remains in effect for 10 years from this date) for the "WINE NOT" mark.

72.     Wine Not has the right to use and protect its Mark and to the goods, services, and businesses associated with the Mark.

73.     Since registering the Mark, Wine Not and its franchisees have extensively advertised the Mark in connection with its products and services.

74.     The Defendants never had a right to use the Mark at the unauthorized St. Petersburg store.

75.     Additionally, the Defendants Aspirations Winery and French's right to use the Mark at the Tampa store ceased when the Franchise Agreement was terminated.

76.     Notwithstanding the termination of the Franchise Agreement, Defendants Aspirations Winery and French continue to advertise their former Wine Not franchise business in printed and electronic directories in violation of the Lanham Act.

77.     French and Aspirations Winery, LLC also continue to use and display the Mark at the unauthorized St. Petersburg store.

78.     The Defendants' continued use and display of the Wine Not name constitutes willful and intentional infringement of the Mark, in violation of 15 U.S.C. § 1114.

79.     Wine Not has suffered irreparable harm and will continue to suffer irreparable harm as a result of the Defendants' infringement.

80.     Wine Not has no adequate remedy at law to protect its substantial business and property rights.

81.     Wine Not is entitled to preliminary and permanent injunctive relief preventing the infringement of the Marks

82.     Wine Not is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## COUNT FOUR
### (False Advertising Under Section 43(a) of the Lanham Act: All Defendants)

83.     Wine Not restates paragraphs 1 through 42 above.

84.     In the continued operation of the Tampa store and the unauthorized St. Petersburg store, the Defendants made statements of fact and representations of fact.  French and Aspirations Winery are suggesting that they are able to continuing operating the Tampa store despite the lawful termination.  Also, the Defendants are suggesting that they is able to operate the St. Petersburg store, and that the wine being sold at the St. Petersburg store is derived from the Wine Not system and is authorized by Wine Not.  The statements constitute misrepresentations of the nature, quality, and origins of Defendants' business.

85.     These false, misleading, and fraudulent statements have been disseminated to the purchasing public.

86.     These false, misleading, and fraudulent statements have actually deceived or have the tendency to deceive a substantial portion of the population looking for customized wines.

87.     These false, misleading, and fraudulent statements are material and likely have influenced the purchasing decisions of individuals purchasing customized wines.

88.     Defendants have caused these false, misleading, and fraudulent statements about his wine business to enter interstate commerce.

89.     As a direct result of these actions, Wine Not has been irreparably injured and is likely to continue to be injured because individuals will purchase the customized wine from the Tampa store and the unauthorized St. Petersburg store in reliance on the quality of the wine and believing, wrongfully, that the product is an approved Wine Not wine, when, in fact, Wine Not does not approve of the continuing operation by French of the Tampa store, the wine at the unauthorized St. Petersburg store is made from juices supplied by unapproved suppliers, and the wine at the unauthorized St. Petersburg store is being sold in an unauthorized location and in an unauthorized manner.

90.     Defendants' activities constitute violations of § 43(a) of the Lanham Trademark Act, which is set forth at 15 U.S.C. § 1125(a).

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays this Court for:

1.      Judgment to be entered in its favor and against the Defendants.

2.	A preliminary and permanent injunction prohibiting French from breaching the terms of his Non-Competition and Confidentiality Agreement, infringing Wine Not's trademarks, and continuing his false advertising.

3.	A preliminary and permanent injunction prohibiting Aspirations Winery from breaching the Franchise Agreement's covenant not to compete and other post-termination obligations, and infringing Wine Not's trademarks, and continuing its false advertising.

4.	A preliminary and permanent injunction prohibiting Aspirations Winery, LLC from infringing Wine Not's trademarks, and continuing its false advertising.

5.	An award of all legal expenses, including attorneys' fees, incurred in connection with this action.

6.	Such other relief as the Court deems appropriate.


Dated:  January 19, 2006

s/Christian C. Burden
Christian C. Burden, Trial Counsel
Florida Bar No. 0065129
christian.burden@dlapiper.com
DLA PIPER RUDNICK GRAY CARY
101 East Kennedy Boulevard
Suite 2000
Tampa, FL 33602-5149
Telephone:  (813) 222-5906
Facsimile:  (813) 229-1447

Kerry L. Bundy (MN #266917)
Jacob R. Kraus (MN #0346597)
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis MN 55402-3901
Telephone: (612) 766-7000
Facsimile: (612) 766-1600

**ATTORNEYS FOR PLAINTIFF
WINE NOT INTERNATIONAL, INC.**